UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL MOSSNER,

        Plaintiff,                         CIVIL ACTION NO. 05 CV 74839 DT

      v.                                   DISTRICT JUDGE VICTORIA A. ROBERTS

JO ANNE B. BARNHART,             MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

**I. Introduction**

      This Social Security disability case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated herein, the court recommends that the Commissioner's motion be granted and that plaintiff's motion be denied.

**II. Background**

      On March 27, 2003, plaintiff filed an application for Social Security Disability Insurance Benefits (DIB), claiming that he suffered from bilateral carpal tunnel syndrome and bilateral shoulder impairments, and that he had been unable to work since January 22, 2002, as a result of these impairments. (Tr. 41-43, 54) Plaintiff was 52 years of age when he filed the application. (Tr. 76) He did assembly and data processing work for Delphi Automotive Systems from 1973

1

up to his alleged onset date, and for a brief period after his onset date, from September 15, 2003 to April 1, 2004.  (Tr. 55, 67-69, 74, 85)

The Social Security Administration (SSA) denied plaintiff's claim on May 30, 2003.  (Tr. 26-30)  Plaintiff then requested a hearing before an administrative law judge (ALJ).  (Tr. 31)  The hearing was held on April 14, 2005 before ALJ Regina Sobrino.  (Tr. 162-87)  Plaintiff, represented by counsel, appeared and testified at the hearing.  The ALJ also took testimony from a vocational expert (VE).

On June 22, 2005, the ALJ issued a decision denying plaintiff's claim.  (Tr. 13-21)  The ALJ determined that plaintiff had carpal tunnel syndrome and degenerative joint disease of the shoulders, and that his impairment were "severe" within the meaning of 20 C.F.R. § 404.1520, but that he did not have an impairment or combination of impairments that met or equaled any impairment listed in Appendix 1, Subpart P of the Social Security Regulations.  Further, the ALJ concluded that while plaintiff's impairments precluded him from performing his past work, he retained the capacity to perform work that existed in significant numbers in the national economy, including semi-skilled receptionist work.  Accordingly, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act.

Following the ALJ's denial of his application, plaintiff filed a request for review of the ALJ's decision with the SSA's Appeals Council.  (Tr. 11-12)  The Appeals Council denied the request on November 16, 2005.  (Tr. 4-6)  The ALJ's decision thus became the final decision of the Commissioner.

On December 22, 2005, plaintiff filed suit for review of the Commissioner's decision

pursuant to 42 U.S.C. § 405(g).  As noted above, the matter comes before the court on the parties' cross-motions for summary judgment.  Plaintiff, who is represented by counsel in this matter, contends that the ALJ erred in concluding that he retained the ability to perform semi-skilled receptionist work.  The Commissioner contends that the disability determination must be affirmed because it is supported by substantial evidence and no legal errors were made in reaching that determination.

## III.  Legal Standards

### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  The claimant bears of the burden of proving that he is disabled.  Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims.  20 C.F.R. § 404.1520.  As discussed

in Foster, Id. at 354 (citations omitted), this process consists of the following:

> The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment. If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

### B. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

**IV. Analysis**

At the fourth step of the five step disability determination process, the ALJ concluded that plaintiff was not capable of performing his past work. The burden thus shifted to the Commissioner to demonstrate that plaintiff was capable of performing other work. Foster, supra, 279 F.3d at 354. Based on plaintiff's vocational factors, residual functional capacity (RFC), as determined by the ALJ, and the testimony of the VE, the ALJ determined that plaintiff was capable of working, in the light exertion category, as a security guard or an attendant, or, in the sedentary, semi-skilled category, as a receptionist. (Tr. 21)[1] The ALJ further determined that

---

[1]ALJ determined that plaintiff had the following RFC (See Tr. 19-20):
The claimant has the residual functional capacity to lift, carry, push and pull negligible amounts frequently and 3 pounds occasionally with one hand, and up to 10 pounds occasionally using both hands. He can push or pull no more than negligible weights with the right (dominant) arm. He can stand/walk 6 hours per 8-hour work day and sit up to 8 hours per 8-hour work day. He should have the opportunity to alternate sitting/standing for a few minutes, approximately every 60 minutes. He cannot climb ladders/ropes or scaffolds or crawl, but he can occasionally stoop and crouch. He can do no forceful gripping, grasping, pinching, twisting or squeezing on a sustained basis. He can occasionally handle, finger and feel. He cannot do overhead reaching and he should not be exposed to vibration. He can do no high-speed or repetitive hammering or other hand/wrist movements. Use of his hands should be distributed over the work day.

there were a significant number of such jobs in the national economy.[2]  Accordingly, the ALJ concluded that plaintiff was not disabled.

      The issue in this matter centers upon the ALJ's determination that plaintiff was capable of performing semi-skilled receptionist jobs.  The VE concluded that plaintiff's data processing job fell within the Dictionary of Occupational Titles (DOT) definition of "general office clerk" and that plaintiff had obtained computer, math, general office, and office machine skills from that job.  (Tr. 91)  Further, the VE testified that there were 5,000 receptionist positions plaintiff could perform given his RFC and the transferable skills he obtained from his data processing job.  (Tr. 180-83)  The VE noted that the 5,000 receptionist jobs she identified would not involve "using the computer quite as much" and, therefore, that those jobs would accommodate an RFC allowing for only occasional handling, fingering, and feeling.  (Tr. 183-85)

      Plaintiff contends, contrary to the testimony of the VE and the findings of the ALJ, that he did not acquire any general office or office machine skills and, therefore, that there is no basis in the record for the ALJ's determination that he could perform semi-skilled receptionist work.  The court agrees that there is a thin evidentiary basis for the finding that plaintiff obtained any "general office" or "office machine skills."  The VE testified that office machine skills included the ability to use a copier and a fax machine, and that general office skills included things such as filing and answering the phone.  (Tr. 185)  There is little in the record to indicating that plaintiff

---

[2]The VE testified that there were 12,000 security guard positions, 4,400 attendant positions, 1,300 transportation attendant positions, and 5,000 semi-skilled reception jobs within plaintiff's RFC in the lower peninsula of the State of Michigan.  (Tr. 182-86)

actually obtained such skills. The record contains no written description of plaintiff's job duties at Delphi. Rather, the only evidence in the record regarding plaintiff's job duties is plaintiff's own description of the job in the SSD application forms he filled out and in the testimony he gave at the hearing. There is nothing particularly illuminating in the application forms. There is certainly nothing therein indicating that he gained general office skills or office machine skills. At the hearing, plaintiff indicated that his data entry job involved "[j]ust mostly punching numbers into a program," making "charts and graphs" of the data using a computer program, and making copies of the reports for the supervisors. (Tr. 176-77) He denied that he did any "filing or things of that nature." (Tr. 177) There is otherwise nothing in the record regarding plaintiff's data processing job.

Thus, while there is evidence in the record that plaintiff used a computer and a copier in his data processing job, there is no evidence that he used a fax machine or other office equipment, no evidence that he did any filing, no evidence that he answered the phone or took messages, and no evidence that he otherwise performed any tasks from which he might have gained any general office or office equipment skills. Rather, the evidence in the record indicates that plaintiff learned the skill, if it is indeed a transferable skill, of data entry from the job. Thus, the ALJ's conclusion that plaintiff obtained general office and office equipment skills is suspect. However, even if the court were to rule in favor of plaintiff on this issue, it would have no bearing on the outcome, as discussed below.

Conspicuous by its absence from plaintiff's brief is any objection to the ALJ's RFC determination and her related conclusion that plaintiff retained the capacity to work as a security

guard or an attendant. That may well be because there is undoubtedly ample evidence in the record to support these findings. With respect to the RFC determination, as indicated in the "Human Resources – Medical Notice of Restrictions" forms contained in the record, plaintiff's physicians at Delphi placed him on work restrictions of no repetitive lifting, turning, pulling, or pushing with the right arm, no use of vibrating tools, no high-speed repetitive hammering, and no sustained pinching or gripping. (Tr. 136-53) The ALJ included each of these restrictions in her RFC determination. The Delphi physicians also included a lifting limit of three pounds. The ALJ included a three pound limit in her RFC determination with respect to plaintiff's use of one arm, and a 10 pound limit for occasional lifting with both arms. These limits are consistent with the restrictions imposed by the Delphi physicians, and are more restrictive than the weight limits set forth in the Physical Residual Functional Capacity Assessment form filled out by the State of Michigan Disability Determination Services consulting physician, who determined that plaintiff could occasionally lift up to 20 pounds and frequently lift up to 10 pounds. (Tr. 154-60) Moreover, the ALJ included in the RFC determination restrictions beyond those recommended by the Delphi physicians, including a sit/stand option, no climbing or crawling, and no overhead reaching. Further, plaintiff's activities of daily living are consistent with the ability to work within the restrictions included in the RFC determination. Plaintiff reported, among other things, that he played golf up to three times per week, that he went boating, that he did yard work, including hedge clipping, on a regular basis, that he used a computer for on-line shopping and for checking his e-mail, that he could see to his grooming needs without assistance, that he did the majority of the grocery shopping for he and his wife, and that he could fix meals for himself.

(Tr. 78-94, 173-76) In sum, the court finds that there is substantial evidence in the record to support the ALJ's RFC determination.

There is, likewise, substantial evidence in the record to sustain the ALJ's conclusion that plaintiff remained capable of working as a security guard or an attendant, which do not require any of the transferable skills identified by the ALJ. As noted above, the VE testified, in response to a hypothetical posed by the ALJ incorporating the RFC determination, that a person of plaintiff's vocational profile, with the indicated RFC, could work as a security guard or an attendant. Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987). The court, having concluded that the ALJ's RFC determination is supported by substantial evidence, further finds that the hypothetical posed by the ALJ, which tracked the language of the RFC determination, painted an accurate picture of the plaintiff's limitations.

Based on the foregoing, even if the ALJ erred in concluding that plaintiff could perform semi-skilled receptionist work, the error was harmless in light of the ALJ's alternative conclusion that plaintiff remained capable of working as a security guard or an attendant. Again, plaintiff has not challenged that conclusion in this proceeding, and, in any event, the court has found that it is supported by substantial evidence. Removing the 5,000 semi-skilled receptionist jobs from the equation, there are still in excess of 16,000 unskilled security guard and attendant jobs in the

regional economy that plaintiff remains capable of performing.  That figure unquestionably represents a significant number of jobs.  See Hall v. Bowen, 837 F.2d 272 (6th Cir. 1988)(1,350 to 1,800 jobs in Dayton, Ohio area found to constitute "significant" number); Stewart v. Sullivan, 904 F.2d 708 (Table), 1990 WL 75248 at **4 (6th Cir.(Ky.))(125 jobs in area with population of 130,000 constituted significant number of jobs); Jones v. Commissioner of Social Security, 121 F.3d 708 (Table), 1997 WL 413641 (6th Cir.(Mich.))(1200 to 1500 jobs in Detroit, Michigan area constituted significant number); Vick v. Secretary of Health and Human Services, 961 F.2d 1580 (Table), 1992 WL 92833 (6th Cir.(Ky.))(1100 jobs); see also Jenkins v. Bowen, 861 F.2d 1083 (8th Cir. 1988)(500 jobs); Pollice v. Secretary of Health and Human Services, 843 F.2d 1392 (Table), 1988 WL 28536 (6th Cir.(Mich.))(3600 jobs in State of Michigan a "significant" number).  Accordingly, there is sufficient evidence in the record to support the ALJ's decision even if the ALJ erred in the manner alleged.

**V.  Conclusion**

For the reasons stated above, the court concludes that there is substantial evidence in the record to support the Commissioner's disability determination and that no errors of law were made in reaching that determination.  Accordingly, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's cross-motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

    Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                                        s/Virginia M. Morgan  
                                                        VIRGINIA M. MORGAN  
Dated: May 15, 2006             UNITED STATES MAGISTRATE JUDGE

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of record and the Social Security Administration via the Court's ECF System and/or U. S. Mail on May 15, 2006.

                                                         s/Jennifer Hernandez  
                                                         Case Manager to  
                                                         Magistrate Judge Virginia M. Morgan